UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RODNEY JONES,

    Plaintiff,

vs.
                                            Case No.: 8:15-cv-702-T-24EAJ

GULF COAST HEALTH CARE OF
DELAWARE, LLC d/b/a ACCENTIA
HEALTH AND REHABILITATION
CENTER OF TAMPA BAY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court on Defendant Gulf Coast Health Care of Delaware, LLC d/b/a Accentia Health and Rehabilitation Center of Tampa Bay's ("Accentia Health") Motion for Summary Judgment (Dkt. 20), to which Plaintiff Rodney Jones has filed a response in opposition (Dkt. 27). For the reasons stated herein, the motion is granted.

**I.**     **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or

by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

## II. BACKGROUND

Plaintiff Rodney Jones went to work for Defendant Accentia Health on April 26, 2004 as an activity director. Accentia Health is a skilled nursing facility that provides long term care. In his position as activities director, Plaintiff oversaw five assistant activity directors, decorated the building for holidays and events, maintained calendars, charts and care plans, and oversaw outings, parties and recreation for Accentia Health's patients. Plaintiff also headed Accentia Health's volunteer program.

In August 2014, Plaintiff had an MRI performed on his right shoulder. It was determined that he needed surgery, and it was scheduled for September 26, 2014. Plaintiff applied for and was granted leave under the Family Medical Leave Act ("FMLA") for his surgery and rehabilitation, which began on September 26, 2014 and continued until December 18, 2014, meaning Plaintiff was to return to work from FMLA leave on December 19, 2014. On December 18, 2014, Plaintiff's doctor reported that Plaintiff would not be able to return to work on December 19, 2014 because he needed additional shoulder therapy.

Accentia Health required that Plaintiff provide a Fitness for Duty Certificate in order to be allowed to return to work. Plaintiff asked Donnie Daniels (Accentia Health's Administrator) if he could return to work on light duty despite not having the certificate. Because Plaintiff could not provide a Fitness for Duty Certificate on December 19, 2014, he did not to return work and Donnie Daniels permitted Plaintiff to take an additional 30 days of non-FMLA medical leave to complete his physical therapy. Plaintiff's new return date was set for January 18, 2015. Daniels confirmed this extended 30 day non-FMLA leave in a December 19, 2014 letter to Plaintiff.

Plaintiff twice visited Busch Gardens theme park in Tampa, Florida while he was on FMLA leave and he posted pictures of holiday decorations at Busch Gardens on his Facebook page. Plaintiff may have also texted some of these Busch Gardens pictures to his co-workers as ideas for holiday decorations at Accentia Health. During Plaintiff's 30 day non-FMLA medical leave, he visited the island of St. Martin for approximately three days. Plaintiff posted pictures and updates about his time in St. Martin on his Facebook page, including a picture on the beach, posing by a boat wreck, and a picture of Plaintiff wading/swimming in the ocean. At some point before the exhaustion of Plaintiff's 30 day non-FMLA medical leave, management at Accentia Health learned that Plaintiff was posting pictures and updates of his St. Martin trip while on medical leave.

In January 2015, Plaintiff's doctor completed an FMLA fitness for duty certification stating that Plaintiff could return to work on January 19, 2015. Plaintiff returned to work on that day and met with Daniels. Plaintiff presented the fitness for duty certification to Daniels. Daniels showed Plaintiff the Facebook pictures he posted of his trip to St. Martin and the pictures taken at Busch Gardens and told Plaintiff that he was suspended from employment pending an investigation. Plaintiff was allowed the opportunity to provide additional facts, but Plaintiff did not do so. Daniels subsequently terminated Plaintiff on January 23, 2015. Daniels testified that he terminated Plaintiff due to the poor judgment Plaintiff exhibited as a supervisor and the negative impact that his Facebook posts and text messages had among the associates as Accentia Health. Daniels contended that this was the type of behavior prohibited by Accentia Health's Social Media Policy, which Plaintiff signed and acknowledged on January 31, 2014.[1] Accentia Health's Director of HR, Dana Wood, also testified that Plaintiff's behavior violated the Social Media Policy. Plaintiff

---

[1] The Social Media Policy provides that "I understand that Social Media usage that adversely affects job performance of fellow associates, residents, family members, people who work on behalf of Gulf Coast Health Care or violates the HIPPA privacy law may result in disciplinary action up to and including termination." Dkt. 19-2 at 131.

states that Daniels did not specifically cite a violation of the Social Media Policy as the reason for his suspension and termination. Instead, in a declaration, Plaintiff stated that "Mr. Daniels told me that corporate believed I was abusing my FMLA leave" and that "I was suspended due to a misuse of my FMLA leave, based on my Facebook pictures." Dkt. 27-2 ¶ 32. Daniels denied telling Plaintiff that corporate said Plaintiff was abusing his FMLA leave and denied telling Plaintiff that he was suspended due to his misuse of FMLA. Dkt. 19-3 at 69-70.

In his Complaint, Plaintiff also contended that two other Accentia Health employees were permitted to return to work "despite wearing medical devices." This allegation is relevant to Plaintiff's FMLA interference claim, and the Court previously denied Accentia Health's motion for partial judgment on the pleadings on the FMLA interference claim. The Court denied the motion based on Plaintiff's assertion he could prove through discovery that Accentia Health did not uniformly apply its fitness for duty certification policy to similarly situated employees returning from FMLA leave. Dkt. 16. Plaintiff did not identify the two individuals who wore medical devices in his Complaint. In the motion for summary judgment, Accentia Heath discusses employees Kasey O'Leary and Faith Turner and Plaintiff's response acknowledges that those are the two employees referred to in the Complaint. The Heath Administrator for Accentia Health, Kasey O'Leary, testified that she was out for a month on FMLA leave and was "fully released" upon her return. Although she was permitted to wear regular shoes upon her return, she wore a special shoe so that the area where she had a skin graft could fit into the shoe. Dkt. 27-1 at 18. O'Leary also testified that Faith Turner, Admissions Assistant at Accentia Health, returned to work wearing a boot on her foot. Turner produced a fitness for duty certificate upon her return from FMLA leave. *Id.* at 23-25. In her position as admissions assistant, Turner sat at her desk most of the day and also gave tours of the facility. *Id.*

Daniels testified that Accentia Health required associates returning from FMLA leave to produce a fitness for duty certification in order to return, as this was a policy of Accentia Health's. Dkt. 19-3 at 73, 74.  In fact, Daniels agreed that while he was an administrator at Accentia Health, every associate (not just Plaintiff) returning from FMLA leave was required to produce a fitness for duty certificate.  *Id.* at 73.  As for the two other employees that wore "medical devices" upon their return from FMLA leave, Plaintiff testified that he did not know whether they were required to produce fitness for duty certificates or not.  Dkt. 19-2 at 97-99.

### III.     MOTION FOR SUMMARY JUDGMENT

The FMLA gives employees the right to twelve weeks of unpaid leave due to a serious health condition that makes the employee unable to work.  29 U.S.C. § 2612(a)(1).  An employer must not "interfere with, restrain, or deny [an employee's] exercise of or [his] attempt to exercise" FMLA rights.  29 U.S.C. § 2615(a)(1).

There are two types of FMLA claims: (1) interference claims, where an employer denies or otherwise interferes with substantive rights under the FMLA; and (2) retaliation claims, where an employer retaliates against an employee for engaging in activity protected by the FMLA. *Penaloza v. Target Corp.*, 549 F. App'x 844, 847 (11th Cir. 2013).  Plaintiff brings both claims in his Complaint.  The Court will address each claim.

#### A.     FMLA Interference

An employee claiming interference must show he was entitled to a benefit that he was denied.  *Id.* (*citing Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206–07 (11th Cir. 2001)).

The FMLA does not require that employers provide more leave than the FMLA's 12–week entitlement.  *Penaloza*, 549 F. App'x at 847.  While employers may choose to give their employees

5

more leave time than the FMLA mandates, the Eleventh Circuit has found "[t]he statute does not suggest that the 12 week entitlement may be extended." *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999). "As long as the employee has been given the requisite leave period, the statute does not forbid an employer from discharging an employee who fails to come back to work at the expiration of the leave. An employee's insistence on taking more leave than is allowed by the FMLA is not protected conduct." *Armburst v. SA-ENC Operator Holdings, LLC*, No. 2-14-cv-55-Ftm-38CM, 2015 WL 3465760, at *5 (M.D. Fla. June 1, 2015).

An employee who takes FMLA leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" "or [restored] to an equivalent position." *Diaz v. Transatlantic Bank*, 367 F. App'x 93, 95 (11th Cir. 2010) (quoting 29 U.S.C. § 2614(a)(1)(A)). "As a condition of restoration ..., the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4). The "fitness-for-duty certification" is further discussed in 29 C.F.R. § 825.312, which provides:

> As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work.

29 C.F.R. § 825.312(a).

It is not disputed that Plaintiff's FMLA leave began on September 26, 2014 and expired on December 18, 2014. Plaintiff did not return to work on December 19, 2014. By failing to return to work, Plaintiff forfeited his right to be reinstated under the FMLA. Because Plaintiff was given the requisite twelve week leave, the FMLA did not forbid Defendant from discharging

6

Plaintiff after he failed to return to work at the expiration of the twelve week period. *See Armburst*, 2015 WL 3465760, at *5.

The Court previously noted that Plaintiff contended that Accentia Health interfered with his right to return to work on December 19, 2104 by requiring that Plaintiff produce an FMLA fitness for duty certification in order to return from FMLA leave while Accentia Health permitted two other employees to return to work wearing medical devices. Plaintiff did not assert whether the other employees were required to produce fitness for duty certifications, and whether such employees were similarly situated, *i.e.,* same job and same medical condition. The Court permitted Plaintiff's interference claim to proceed as Plaintiff may have been able to prove as much through discovery. Plaintiff has failed to do so. Plaintiff failed to show that the employees were similarly situated: Plaintiff had shoulder surgery while the other two employees took leave for problems with their feet. The facts undisputedly show that Accentia Health applied a uniform policy for its employees returning from FMLA leave in that all employees were required to produce a fitness for duty certification. The two other employees Plaintiff asserts returned to work wearing medical devices obtained fitness for duty certifications before returning.

Because Plaintiff has failed to establish a prima facie case of FMLA interference, there is no genuine issue to preclude summary judgment on Plaintiff's FMLA interference claim. Accentia Health is entitled to summary judgment on this claim.

### B. <u>FMLA Retaliation</u>

In order to establish a claim of retaliation, an employee must prove that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). "In other words, [unlike an

interference claim,] a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (internal quotation omitted).

If the employee establishes a prima facie case of retaliation, the burden shifts to the employer "to articulate a legitimate reason for the adverse action." *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008) (*quoting Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)). If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (internal quotation omitted).

Plaintiff here alleges that Accentia Health retaliated against him for taking FMLA leave by terminating his employment upon his return from non-FMLA medical leave. It is not disputed that the first two prongs of a prima facie retaliation claim are satisfied: (1) Plaintiff engaged in a statutorily protected activity by taking FMLA leave, and (2) he suffered an adverse employment decision when he was terminated. Accentia Health contends that Plaintiff's claim fails because he does not establish the third prong of causation. To prove a causal connection, the Eleventh Circuit requires a plaintiff only demonstrate that "the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (internal citations omitted). A plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action. *Id.* "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert*

*v. St. Mary's Health Care System, Inc.*, 439 F. 3d 1286, 1298 (11th Cir. 2006) (internal citation omitted). "[M]ere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* (citing cases in support).

Plaintiff argues that the temporal proximity between the *end* of Plaintiff's FMLA leave (December 19, 2014) and the dates of his suspension and termination (January 19, 2015 and January 23, 2015) support causation. Accentia Health frames the issue of temporal proximity as evaluated between the dates of the beginning of Plaintiff's FMLA leave (September 26, 2014) and the date of his termination (January 23, 2015) – a four month period. Accentia Health is correct that the Eleventh Circuit measures temporal proximity in FMLA cases by comparing the date the leave *began* with the date of termination. *See, e.g., Penaloza v. Target Corp.*, 549 Fed. Appx. 844, 848 (11th Cir. 2013) (finding no causal connection in retaliation claim where plaintiff was terminated two weeks after her return from FMLA leave because the time period between her request for leave and termination was over three months and insufficient in itself to establish causation). Here, Plaintiff's request for FMLA leave was at least four months before he was terminated. Thus, without more, this is insufficient to support causation.

The Court may look to other factors, if present, that would support causation. *See Thomas*, 506 F.3d at 1364 (stating that in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law). In further support of causation, Plaintiff points to the fact that Daniels told Plaintiff upon his return from leave that he was suspended because corporate said Plaintiff was *abusing* his FMLA leave. Plaintiff does not show that he was fired for exercising his

9

right to *take* FMLA leave. Plaintiff's actions while on FMLA leave and on non-FMLA led to his termination. There is no evidence that Plaintiff was retaliated against for *requesting and taking* FMLA leave. An employer "may terminate an employee for a good or bad reason without violating federal law. [Courts] are not in the business of adjudging whether employment decisions are prudent or fair." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Plaintiff has failed to show causation and his FMLA retaliation claim fails as a matter of law. Because Plaintiff has not established a prima facie case of retaliation, the analysis ends and Accentia Health is entitled to summary judgment on the FMLA retaliation claim.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

The Clerk is directed to enter judgment in favor of Defendant Accentia Health and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of February, 2016.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record